IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GRISELLE APONTE MERCED,

    Plaintiff,

        v.                      CIVIL NO.: 10-1253 (MEL)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff Griselle Aponte-Merced ("plaintiff" or "claimant") was born in March of 1966. (Tr. 23). She completed two years of college and was employed as a clerical worker in a government agency until June 30, 2003, when she was laid off. (Tr. 25, 147-48, 152). Plaintiff states that she suffers from muscular spasms, dextroscoliosis, herniated discs, high blood pressure, migraines, sinusitis, and back pain, as well as depression from her inability to take care of herself. (Tr. 31, 147).

On August 30, 2007, plaintiff filed an application for Social Security Disability Insurance benefits, alleging disability beginning on June 30, 2003. (Tr. 14, 129, 143). Plaintiff's application was denied initially as well as on reconsideration. (Tr. 14, 39-43, 44-46). After plaintiff's timely request was granted, a hearing took place before an Administrative Law Judge ("ALJ") on March 30, 2009. (Tr. 14, 20-38). Plaintiff attended the hearing with a non-attorney representative and testified regarding her alleged disability. (Tr. 20-38). On May 13, 2009, the ALJ rendered a decision denying plaintiff's claim. (Tr. 8-19). The Appeals Council denied

plaintiff's request for review on January 27, 2010; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). (Tr. 1-7).

On March 25, 2010, plaintiff filed a complaint in this court seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), claiming that the ALJ's decision was not based on substantial evidence. (Docket No. 1). On January 20, 2011, defendant filed both an answer and a certified transcript of the administrative record. (Docket Nos. 12; 13). Both parties have filed supporting memoranda. (Docket Nos. 20; 25).

## II. LEGAL STANDARD

Section 205(g) of the Social Security Act provides that a district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

"In Social Security cases, the [c]ourt must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir.1986) (per curiam); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir.1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Moreover, a determination of substantiality must be made based on the record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir.1987) (per curiam).

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled with the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 146–47 (1987). A claimant is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. Step one requires the ALJ to determine whether the

claimant is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or "combination of impairments that is severe." 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then disability benefits are denied. 20 C.F.R. § 404.1520(c). Otherwise, the ALJ proceeds to step three to determine whether the claimant's impairment or impairments are equivalent to one of the those listed in 20 C.F.R part 404, subpart P, appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the claimant is conclusively presumed to be disabled. 20 C.F.R. § 404.1520(d); Berríos Vélez v. Barnhart, 402 F. Supp. 2d 386, 390 (D.P.R. 2005). If not, then the ALJ moves on to step four, to assess whether the claimant's impairment or impairments prevent her from doing the work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant can perform her past relevant work despite her impairment(s), then disability benefits are denied. 20 C.F.R. § 404.1520(f). If the ALJ concludes that the claimant's impairment or impairments do prevent her from performing her past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with her age, education, and work experience, allows her to perform any other work. 20 C.F.R. § 404.1520(a)(4)(v). If she can, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

Under steps one through four, the plaintiff has the burden of proving that she cannot return to her former job because of her impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir.1989) (per curiam). Once she has

---

[1] An individual's residual functional capacity is the most that she can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).

carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

**III.   THE ALJ'S FINDINGS**

1. Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2004. (Tr. 16).

2. Plaintiff did not engage in substantial gainful activity between June 30, 2003, her alleged onset date, and March 31, 2004, her last date insured. (Tr. 16).[2]

3. Through her last date insured, plaintiff had the following medically determinable impairments: idiopathic scoliosis and uncontrolled hypertension. (Tr. 16).

4. Through her last date insured, claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments. (Tr. 16).

5. Plaintiff was not under a disability, as defined in the Social Security Act, between June 30, 2003, her alleged onset date, and March 31, 2004, her date last insured. (Tr. 19).

**IV.   THE MEDICAL EVIDENCE CONTAINED IN THE RECORD**

The certified medical record contains, *inter alia*, the following medical evidence regarding plaintiff's conditions:

Plaintiff was treated at the State Insurance Fund ("SIF") from 1992 to 1996 for exposure to fumes, paint, and dust. (Tr. 84-89; 300-01). In December of 1992, she complained of

---

[2] The ALJ determined the last date insured to be March 31, 2004, although plaintiff's earnings record showed wages in 2004 and 2005. (Tr. 14). Plaintiff testified at the hearing that she did not work in 2004 or 2005, and that these earning were erroneously attributed to her. (Tr. 22-23). She also submitted an application to the Social Security office to have these earnings removed from her record, stating that she believed someone else had been working under her Social Security number. (Tr. 140-42). Plaintiff has not contested the ALJ's determination that March 21, 2004 was her last date insured.

dizziness, headaches, blurred vision, and chest pain. (Tr. 300). She did not have a previous history of systematic illness except for two previous episodes of uncontrolled blood pressure. Id. Dr. Lynette Ávila Cortes treated the plaintiff for gas fumes inhalation and discharged her the same day. Tr. 300-01. Dr. Ávila's progress notes mention an x-ray completed in May of 1992 that showed evidence the plaintiff had dextroscoliosis. (Tr. 301). In 1996 the plaintiff returned to the SIF complaining of similar symptoms, which were attributed to dust inhalation. Dr. Juan Carlos Messini Vélez treated the plaintiff for these symptoms. (Tr. 84; 286).

Dr. Pedro L. Lastra Calderón, a surgeon, treated plaintiff from 1991 to 2002. (Tr. 79-82). Dr. Lastra's progress notes on record from 1991-1998 show evidence of muscle spasms, episodes of fever and coughs, as well as various pain ailments, including back pain, thoracic pain and pain in neck and right arm. (Tr. 79-81). As early as 1993, Dr. Lastra noted that plaintiff had back pain that increased with movement, pain in the thoracic area, and muscle spasm. (Tr. 79). In 1999, Dr. Lastra noted that plaintiff had back pain that worsened with movement and pain in the right side of her neck and left trapezius. (Tr. 81). Dr. Lastra's last evaluation, in 2002, mentions plaintiff had right shoulder pain that would increase with movement. (Tr. 82).

Plaintiff also received treatment from the Canóvanas Medical Group from March 2003 to October 2004. (Tr. 71-78). Progress notes from 2003 mention the following as the plaintiff's conditions: high blood pressure, scoliosis, muscle spasm, fibromyalgia, and severe lumbar pain. (Tr. 72-73; 78). The rest of the information in the Canóvanas Medical Group's progress notes was determined by the translator to be illegible. (Tr. 74, 76-78).

In August 2002, Dr. Tulio L. Ortiz, a radiologist, evaluated an x-ray of plaintiff's back and determined that her dorsal spine showed signs of idiopathic scoliosis because there were signs of curvature. (Tr. 278). Dr. Ortiz also found straightening in plaintiff's lumbar spine,

suggesting the presence of a muscle spasm, and mild levoscoliosis of the spine. Id. No structural abnormalities were noted. Id.

On February 6, 2008, Dr. Zaira Vázquez, a state agency consulting physician, provided an assessment of plaintiff's physical capacities and determined that there was insufficient evidence through the date last insured to determine disability. (Tr. 224).

As to the plaintiff's mental conditions, there is no evidence in the medical record showing that plaintiff received treatment for her alleged depression prior to the date last insured. In his medical review, dated February 8, 2008, state agency consulting psychiatrist Dr. Luis Rodríguez determined that plaintiff had no medically determinable impairment through her date last insured. (Tr. 225).

## V.   LEGAL ANALYSIS

The findings of the ALJ reflect an application of the second step of the sequential evaluation process in which plaintiff must show that she has a "severe impairment" (or severe combination of impairments) that significantly limits her ability to do basic work activities. See 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ established that "claimant's physical and mental impairments, considered singly and in combination, did not significantly limit her ability to perform basic work activities through the last date insured." (Tr. 19). Therefore he determined that she was not under a disability, as defined by the Social Security Act, through her last date insured. Id. The ALJ noted that, prior to her last date insured, plaintiff's medically determinable impairments could have produced the symptoms alleged in her testimony, including her claims of difficulty while walking, her use of a cane, and pain from the neck to lower back. (Tr. 17). However, the ALJ determined that plaintiff's allegations as to the "intensity, persistence and limiting effects of these symptoms" were not credible, as they were inconsistent with the lack of

evidence showing a severe impairment prior to the date last insured. Id. The ALJ decided that plaintiff did not have a severe impairment because her claims were unsupported by objective clinical or diagnostic evidence, noting the absence in her medical records of neurological findings dated prior to March 31, 2004, plaintiff's date last insured. (Tr. 19). The ALJ also emphasized the fact that plaintiff began psychiatric treatment within the last two years, long after her last date insured. Id.

Plaintiff contends that the ALJ erred in stopping the sequential evaluation process at step two because she maintains that her impairment severely limited her physical and mental abilities prior to the last date insured. Plaintiff claims that at step two, an impairment is not severe where "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." (Docket No. 20, p. 6). Pointing out that the ALJ found that she suffers from idiopathic scoliosis and uncontrolled hypertension, plaintiff argues that these conditions "constituted more than a slight impairment," because they limited her walking capacity, produced muscle spasms, affected her mobility, and caused her to fall." (Docket No. 20, p. 9). Consequently, plaintiff argues that the ALJ should have continued the sequential evaluation process beyond step two. (Docket No. 20, p. 9). Additionally, plaintiff argues that the record does not contain RFC assessments by examining or non-examining physicians and that the ALJ thus improperly translated bare medical facts into functional terms. (Docket No. 20, pp. 10-11).[3]

---

[3] Plaintiff does not challenge the ALJ's determination that her mental health condition did not constitute a severe impairment within the meaning of the Social Security Act prior to the last date insured. Therefore, only the ALJ's findings and determinations as to plaintiff's physical impairments will be addressed herein.

### A. The ALJ's Determination That Plaintiff's Impairments Were Not Severe During the Covered Period

At step two of the sequential evaluation process, it is the plaintiff's burden to prove that she has a medically determinable severe impairment or a combination of medically determinable impairments. Ramos v. Barnhart, 60 Fed. Appx. 334, 335 (1st. Cir. 2003) (citing Bowen v. Yuckert, 482 US 137, 146 n.5 (1987)). For an impairment to be severe, it must significantly limit a claimant's ability to perform basic work activities. 20 CFR § 404.1520(c); Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1 (1st Cir. 1987) (per curiam). Social Security Ruling 85-28 ("SSR 85-28") clarifies "the policy for determining when a person's impairment(s) may be found 'not severe.'" The First Circuit, interpreting SSR 85-28, has determined that "a claim may be denied at step two . . . where medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered . . . ." Ramos, 60 Fed. Appx. at 335 (citing Barrientos, 820 F.2d at 2); see also Andrades v. Sec'y of Health & Human Servs., 790 F.2d 168, 171 (1st Cir. 1986). Thus, SSR 85-28 establishes a "*de minimis* policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).

Although this threshold may seem low, the ALJ's determination that plaintiff did not meet it is consistent with the evidence of record. The record contains very little evidence regarding plaintiff's condition prior to her date last insured. Although plaintiff submitted evidence showing that her condition worsened in 2007 and 2008, the ALJ was not required to take this evidence into account in determining whether plaintiff was disabled during the insured period, which ended on March 31, 2004. Moreover, the record contains progress notes, but no opinion evidence, from plaintiff's treating physicians. The only medical expert who gave an

opinion about plaintiff's physical conditions was the state agency medical expert who reviewed her file. She concluded that there was insufficient evidence prior to the last date insured to determine disability, despite the fact that the Social Security Agency employees made several attempts to obtain more medical evidence for plaintiff's file. For these reasons, as detailed below, the ALJ's determination that plaintiff did not have a severe impairment or combination of impairments was based on substantial evidence and is hereby affirmed.

To qualify for Social Security disability benefits, a claimant has the burden to show that she was disabled during the coverage period, which is the time period between the alleged disability onset date and the date last insured. See 42 U.S.C. § 416(i); Alcaide v. Sec'y of Health & Human Servs., 601 F. Supp. 669, 672 (D.P.R. 1985); Sampson v. Califano, 551 F.2d 881, 882 (1st Cir. 1977). Accordingly, there must be sufficient medical evidence in the record for the ALJ to determine that the claimant's impairments were of disabling severity during the period of coverage. Alcaide, 601 F. Supp. at 673. While courts have reached different conclusions as to whether post-coverage medical evidence should weigh in determining if a condition was disabling during the coverage period, see id. at 672-73 (collecting cases), the First Circuit has held that "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question [of] whether the claimant's impairment reached disabling severity before his insurance status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552, *5 (1st Cir. 1993) (unpublished); (citing Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir. 1982); Alcaide, 601 F. Supp. at 672-73).[4]

---

[4] For example, in Deblois, post-coverage medical evidence established that plaintiff had a serious mental condition; however, the record lacked any adequate medical evidence of his mental condition prior to his last date insured of March 31, 1972. 686 F.2d at 78. Because plaintiff had been injured in the Vietnam War in 1969, the ALJ noted that his mental condition may have been war-related. Id. at 79. However, although he referred plaintiff for further psychological examinations after the hearing, he did not ask the medical experts to express an opinion as to whether plaintiff's disability had commenced as a result of the 1969 injury, and thus prior to March 31, 1972. Id. at 81.

The medical evidence on plaintiff's record for the period between her alleged onset date, June 30, 2003 and her date last insured, March 31, 2004, is limited. It consists mostly of plaintiff's treating physicians' progress notes, which reflect her diagnoses and the symptoms of which she complained. There is only one x-ray from that time period, and it showed only mild scoliosis and a suggestion of muscle spasm; the disc spaces were normal and there were no structural abnormalities. (Tr. 311). The progress notes indicate that plaintiff was diagnosed with two kinds of scoliosis (dextroscoliosis and idiopathic scoliosis), muscle spasm, and hypertension. The notes also reflect plaintiff's own reporting of her symptoms, specifically, pain in the lower back and right shoulder that increased with movement. However, the complaints are general; they do not indicate the extent to which the pain impinged upon her physical functioning. For example, although progress notes from 1993 indicate that plaintiff complained of back pain that increased with movement and pain in the thoracic area, plaintiff continued working for ten more years—until 2003. Progress notes from 1999 also indicate back pain increasing with movement and notes from 2002 show right shoulder pain increasing with movement. This evidence does not provide a basis from which the ALJ could determine that, by 2003 (the alleged onset year), the pain of which plaintiff complained prevented her from performing work-related activities.

The ALJ noted that the medical evidence of record showed that plaintiff's physical condition worsened in 2007 and 2008, after her last date insured. (Tr. 18). However, he was only required to consider this post-coverage evidence if it helped to determine whether her impairments were severe prior to March 31, 2004, the date that her insured status expired. See Alcaide, 601 F. Supp. at 673. The post-coverage evidence consists of progress notes and some diagnostic tests, including impressions from two MRI examinations performed in April of 2007.

---

Because plaintiff had appeared *pro se* and with a reduced mental capacity, the First Circuit held that "the ALJ had a duty, which ha[d] not adequately been discharged, to develop the record of the etiology of the illness." Id.

The MRIs again showed a suggestion of muscle spasm and well preserved disc spaces, but showed some degenerative changes. (Tr. 243).[5] Additionally, as the ALJ noted, the medical evidence from 2007 showed signs of neurologic changes, such as diminished sensation of the left leg and diminished strength. (Tr. 241). There is also a note from one of plaintiff's doctors dated March 14, 2008, which states that she was diagnosed with a right foot drop secondary to radiculopathy in the lumbar region. (Tr. 245). However, nothing in the doctor's notes or the x-rays indicates that plaintiff developed these symptoms or conditions prior to March 31, 2004. In fact, as the ALJ noted, plaintiff did not consult with an orthopedic specialist until 2006 or a neurologist until 2007. The ALJ also correctly noted that there is no evidence in the record of neurologic complaints prior to the last date insured. Therefore, the medical evidence of record for plaintiff's post-coverage period only provides insight as to the treatment the plaintiff received at the time she was being evaluated; there is no mention of her time of onset or of the severity of her condition before the expiration of her insured status.

Furthermore, neither the evidence from the insured period nor the post-coverage evidence includes any opinions from plaintiff's treating physicians. The Social Security regulations define medical opinions as "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). In order to determine a claimant's RFC, the ALJ cannot rely on raw medical evidence; rather, he must look to physician's opinions to translate that evidence into functional terms. See Vega Valentín v. Astrue, 725 F. Supp. 2d 264, 271 (D.P.R. 2010). The progress notes from plaintiff's treating physicians included her

---

[5] The MRI also showed scoliosis with an apex curve of 26 degrees (Tr. 243), but this cannot be compared with plaintiff's scoliosis during the insured period because the only x-ray in the record from that time period does not indicate the degree of curvature; rather, it only indicates that plaintiff's scoliosis was "mild." (Tr. 311).

diagnoses and symptoms, but no information about the nature and severity of her conditions, their effect on her physical abilities and any resulting physical restrictions. Therefore, the medical evidence of record was unhelpful for determining if plaintiff's conditions were disabling prior to the last date insured.

The only evidence in the record regarding the severity and effects of plaintiff's conditions prior to the last date insured is her hearing testimony. She testified that coworkers noticed her limping before she was laid off in 2003, and that she did not return to work because during that same year she started bumping into things while walking and would often fall. (Tr. 26). Plaintiff stated that from that point on, she started doing less every day. (Tr. 27). When asked if she experienced pain when she was limping, plaintiff answered that she would get spasms. Id. She further testified that she started going to the doctor at that time to figure out what was wrong and that, at the end of 2003, she was prescribed a cane to avoid the falls. (Tr. 26-27).[6] When plaintiff's representative asked her how many minutes she could walk during the period that she was insured, plaintiff replied, in the present tense, "I can walk up to five minutes, if not less." (Tr. 28). The rest of the questions by plaintiff's representative, as well as plaintiff's replies, were also phrased in present tense and thus do not clearly refer to her physical capabilities during the insured period. (Tr. 28-29). Therefore, even plaintiff's testimony sheds little light on her condition during the coverage period.

Moreover, the ALJ did not find plaintiff's testimony to be credible. (Tr. 17). The ALJ attributed his disbelief of plaintiff's testimony to its incongruence with the medical findings on

---

[6] Plaintiff stated that the doctor who prescribed her the cane was a neurologist in Fajardo, but there is no evidence in the record from this neurologist, nor does any neurologist located in Fajardo appear on any of the lists of treating physicians that plaintiff provided to the Social Security Administration. (Tr. 184-85; 193). Additionally, notes dated December 5, 2007 by a Social Security Administration employee from a telephone call with plaintiff (for the purpose of obtaining medical records) indicate that plaintiff told the employee that the cane was prescribed in the previous year, i.e., 2006. (Tr. 163).

record and the lack of medical evidence demonstrative of a severe impairment that limited plaintiff's ability to perform basic work activities. Id. He also noted that there were substantial gaps in her treatment records, which tend to undercut her allegations of severity. (Tr. 19). It is well established that an ALJ's credibility determinations should be given considerable deference, especially when supported by specific findings. See Mercier v. Sec'y of Health & Human Servs., 66 F.3d 306 (1st Cir. 1995) (per curium) (unpublished) (citing Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)) ("[S]ubjective measures of credibility [ ] are peculiarly within the judgment of the ALJ."); Dupuis v. Sec'y of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989)) ("[C]onsiderable deference is owed by a credibility finding by the ALJ."); Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

The only medical expert opinion in the record is from Dr. Vázquez, the state agency consulting physician, who reviewed plaintiff's file on February 6, 2008 and concluded that there was "[i]nsufficient evidence for DLI [date last insured] to determine disability." (Tr. 224). On May 20, 2008, another agency physician reviewed the file and affirmed Dr. Vázquez's assessment. (Tr. 176). While it is ultimately the claimant's responsibility to provide sufficient medical evidence about her impairments and their severity, the Commissioner does have a duty to develop the record. 20 C.F.R. § 404.1512(c)-(d). However, nothing in the transcript of proceedings indicates that the Commissioner failed to discharge this duty. The regulations require the Commissioner to make "every reasonable effort" to obtain the claimant's medical history for at least twelve months prior to the month in which the claimant filed for benefits. 20

C.F.R. § 404.1512(d).  Plaintiff filed her application for disability benefits on August 30, 2007, nearly three years after her date last insured.  (Tr. 143).  The record contains three reports of contact by a Social Security employee to plaintiff reflecting the agency's attempts to obtain her medical records.  (Tr. 163-65).  Although the Commissioner may supplement the record by referring a claimant for a consultative examination, it would likely have been fruitless in plaintiff's case as nearly three years had lapsed since plaintiff's insured status expired.  See 20 C.F.R. § 404.1519b(c) ("We will not purchase a consultative examinations . . . when your insured status expired in the past and there is no possibility of establishing an onset date prior to the date your insured status expired.").  In the end, it was plaintiff's burden to show that she had a severe impairment or combination of impairments at step two of the disability evaluation analysis.  The only medical expert who provided opinions as to plaintiff's alleged physical disability concluded that there was insufficient evidence to determine whether she was disabled.  Although the ALJ was not bound by this conclusion, the record supports his determination that plaintiff was not disabled.  See López-Vargas, 518 F. Supp. 2d at 335 (citing Perales, 402 U.S. at 399) ("[T]he determination of the ultimate question of disability is one for the ALJ, not for the doctors or for the reviewing [c]ourts.").

### B.  Residual Functional Capacity

Plaintiff also contends that the record does not contain a medical expert's assessment of her RFC and that, as a result, the ALJ translated bare medical facts into functional terms, which he, as a lay person, is not qualified to do.  (Docket No. 20, pp. 10-11).  With a few exceptions, an ALJ is not qualified to interpret raw medical data in a medical record. Manso-Pizarro v. Sec'y Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1995).  An ALJ can make a "commonsense judgment about functional capacity" without a physician's assessment when the medical

evidence presents relatively little physical impairment. Id. However, when a claimant alleges sufficient facts to place their inability to perform prior work at issue, the ALJ must measure the claimant's abilities and "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Id.

In this case, the ALJ did not interpret raw data from the medical record in determining that plaintiff's impairments were not severe. Rather, he relied on the lack of any opinion evidence to the contrary and the state agency physician's opinions that there was insufficient evidence from which to determine that plaintiff was disabled. Furthermore, a detailed finding of a claimant's RFC occurs at step four, where the ALJ determines whether the claimant's RFC, allows her to perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv). As discussed, the ALJ did not err in stopping the five-step sequential analysis at step two. Because the ALJ found that plaintiff was not disabled at step two, he was not required to continue to step four and make a detailed finding regarding plaintiff's RFC. See 20 CFR § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

## VI. CONCLUSION

Based on the foregoing, it is hereby concluded that the Commissioner's decision was based on substantial evidence. Therefore, the Commissioner's decision is AFFIRMED.

In San Juan, Puerto Rico, this 30th day of March, 2012.

s/Marcos E. López<br>U.S. Magistrate Judge